UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

———————————————

In re:

BEAR CREEK PARTNERS I, LLC,                                    Case No. DT 10-07906
                                                               Hon. Scott W. Dales
                          Debtor.                              Chapter 11

_____/

**OPINION AND ORDER GRANTING
UNITED STATES TRUSTEE'S MOTION TO DISMISS**

PRESENT:    HONORABLE SCOTT W. DALES
            United States Bankruptcy Judge

I. INTRODUCTION AND JURISDICTION

On the United States Trustee's motion to dismiss (the "Dismissal Motion," DN 66), the court must decide whether cause exists to dismiss the Chapter 11 bankruptcy proceedings commenced against Bear Creek Partners I, LLC (the "Debtor"), a special purpose entity holding title to an apartment complex in Petoskey, Michigan.  The Debtor's real estate lender and principal secured creditor, a real estate trust (the "Trust"),[1] concurs in the Dismissal Motion; the Debtor and several petitioning creditors oppose it.

At the September 22, 2010 hearing on the Dismissal Motion (the "Hearing"), the parties agreed that the court could and should make its decision without conducting an additional evidentiary hearing. Because the court recently conducted an evidentiary hearing where it made findings in connection with a cash collateral motion (the "Cash Collateral Motion") and a motion to excuse the Trust's receiver from various obligations as a "custodian" under 11 U.S.C. § 543

---

[1] In this bankruptcy proceeding and in the state court receivership proceedings, the Trust and its successor trustee, Bank of America, N.A., have acted through a servicer, CWCapital Asset Management LLC.

(the "Receiver Motion"), the court agrees that an additional trial to resolve this contested matter is unnecessary.

The court has jurisdiction over the Debtor's chapter 11 case pursuant to 28 U.S.C. § 1334(a). Pursuant to 28 U.S.C. § 157(a), the United States District Court has referred the case and all related proceedings to this court under LCivR. 83.2(a) (W.D. Mich.). The Dismissal Motion qualifies as a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2)(A) and (O). Accordingly, the court has authority to enter a final judgment resolving this contested matter.

## II. ANALYSIS

Time constraints that Congress imposed under 11 U.S.C. § 1112(b)(3) require the court to decide the Dismissal Motion within 15 days after commencing the Hearing unless the moving party, here the United States Trustee (the "UST"), expressly agrees to continue it, or the court finds "compelling circumstances" that prevent it from meeting this deadline. The UST did not consent to a continuance, and the court does not find any compelling circumstances justifying any delay beyond the statutory period. The court notes that, at the Hearing, the Debtor pointed to the pendency of an adversary proceeding against the Trust and two motions to sell estate property as reasons for delay, but the court is not persuaded.

This case came to the bankruptcy court more than a year after the Emmet County Circuit Court appointed a receiver, Unified Management Services, L.L.C. d/b/a Midwest Management Services (the "Receiver"), to take control of the Debtor's principal assets -- the 120-unit Bear Creek Meadows Apartments (the "Real Property") and the related rents (the "Personal Property"). The Receiver has been in continuous possession of the apartment complex, leasing

Page 3 of 8

units, collecting rents, paying vendors, and otherwise performing the functions the Debtor performed prior to its losing control in April, 2009.

In connection with the Receiver Motion, the parties stipulated that the Trust has a valid and properly perfected lien and security interest in the Real Property and the Personal Property (collectively, the "Collateral"). They also agreed that the Debtor owes the Trust an amount that exceeds the value of the Collateral. For purposes of the Cash Collateral Motion, the court found that the Real Property is worth $2,500,000.00, and the Trust's claim is at least $12,500,000.00. The Trust is substantially undersecured.

On August 13, 2010, the court issued an opinion and order regarding the Cash Collateral Motion and the Receiver Motion (the "August 13 Opinion," DN 57), which authorized the Receiver to remain in possession of the Real and Personal Property of the Debtor. Shortly thereafter, the UST filed the Dismissal Motion, arguing that because the apartment complex and the rents cannot be used in the reorganization, cause exists for dismissal:  "[t]he lack of any reasonable means to reorganize or confirm a feasible plan is cause for dismissal." *See* Dismissal Motion at ¶ 19.  In addition, the UST predicted (correctly as it turns out) that the court would not permit the sale of the Real Property free and clear of the Trust's liens, over the Trust's objection. In view of the unusual circumstances and developments in this case, the court agrees that dismissal is warranted.

In 11 U.S.C. § 1112(b)(4), Congress defined "cause" for dismissal by listing sixteen factors that are illustrative,  not exhaustive, including "substantial or continuing loss to or diminution in the estate and the absence of a reasonable likelihood of reorganization." 11 U.S.C. § 1112(b)(4)(A).  Because the specific enumeration is not exhaustive, cause may include other facts or circumstances not expressly listed.  The concept is a flexible one.

To counter the UST's argument that reorganization is doomed, the Debtor points to several filings it has made since the August 13 Opinion, and argues that the court should not resolve the Dismissal Motion before these various contested matters and the adversary proceeding are concluded. In short, the Debtor argues that dismissing the case now would unfairly prejudge the Debtor's plan confirmation, sale motions, and adversary proceeding.

The court is unwilling to accept this somewhat circular argument to justify postponing the dismissal ruling because doing so would encourage debtors to skirt the Congressional directive for speedy resolution of dismissal motions by peppering the court with multiple filings. Of course, the court cannot conduct a disclosure statement hearing, order solicitation and balloting, conduct a confirmation hearing, resolve objections, and try an adversary proceeding within fifteen days after the Hearing.  Nevertheless, the court must somehow accommodate the tension between the § 1112(b)(3) deadline and the Debtor's pending requests. Therefore, though the court should not require the Debtor to establish that its plan will be confirmed, or that its sale motions or adversary proceeding will succeed, it can and must make a prediction about the merits of each in order to determine whether the UST has established "cause" for dismissal.  In its response to the Dismissal Motion, the Debtor has linked these issues.

First, with respect to the Debtor's plan as presently drafted, the court notes that its success depends upon the Debtor's regaining possession of the Real Property and the rents. Without such possession and control, the prospect for reorganization is negligible because this single-asset real estate debtor cannot fund a meaningful distribution, particularly taking into account the cost of administration.  Moreover, the Debtor's plan as filed does not explain how the Real Property will be re-vested in the Debtor, given the court's order permitting the Receiver to remain in possession.  Finally, the plan is contingent upon operating the apartment complex.

Yet, the Debtor's motion to sell the Real Property, discussed below, would have necessarily precluded that possibility.  It appears that the sale motion and the plan were at odds, suggesting a scattershot attempt to avoid dismissal through a proliferation of filings.

As to the motion to sell the Real Estate, the court announced its intention to deny such relief at a hearing held in Grand Rapids on October 1, 2010, finding that the private sale to a related entity "free and clear" of the Trust's lien under 11 U.S.C. § 363(f)(4) rested on a problematic interpretation of the statute, and in any event violated the Trust's rights to credit bid under 11 U.S.C. § 363(k).  The efficacy of the sale from the estate's perspective depended upon a carve-out from another creditor, contingent upon resolution of a thorny and long-standing priority dispute pending in state court.  By denying the sale motion, the court prevented the Debtor from regaining access to the value (if any) of its highly-leveraged and single most important asset.  Any future sale motions, without the Trust's consent, would likely face a similar fate, given the Trust's right to credit bid under 11 U.S.C. § 363(k).

With respect to the Debtor's motion to sell its rights in a certain lawsuit to Crouch Investment Group, LLC, the court notes that the Debtor itself described the lawsuit as having negligible value. Although it would be tempting to turn a worthless asset into cash, that possibility alone is not enough to keep the case open.  Moreover, it is at least plausible that the buyer agreed to purchase the lawsuit of negligible value in an effort to preserve the possibility of purchasing the Real Property through the bankruptcy court, over the objection of the Debtor's principal secured creditor. Now that the court has prevented the non-consensual sale of the Real Property, it is conceivable that the buyer may no longer wish to purchase a fractional interest in the pending appeal through this court.  In any event, if the buyer remains interested in purchasing

the lawsuit, and if the proceeds will not be encumbered by the Trust's lien, nothing prevents the Debtor from using the proceeds to pay creditors even after dismissal.

Next, the court must address the adversary proceeding against the Trust. In its complaint, the Debtor asks the court to find that the state court's receivership order transformed the Receiver and derivatively the Trust into insiders.  The court would certainly hesitate before making such a finding for several reasons, not the least of which is that the Receiver answers, ultimately, to the Emmet County Circuit, rather than the Trust.  More generally, the control that a secured creditor exercises over a debtor does not typically transform the creditor into an insider. *See In re Octagon Roofing*, 124 B.R. 522, 530 (Bankr. N.D. Ill. 1991) (exercise of financial control by a creditor over a debtor which is incident to the creditor-debtor relationship, does not make the creditor an insider); *In re Huizar*, 71 B.R. 826, 832 (Bankr. W.D. Tex. 1987) (creditor-lending institutions must be able to exercise a reasonable amount of debtor control without fear of being labeled an insider).

. The Debtor also alleges in its complaint that the Trust never recorded a Notice of Default as required by M.C.L. § 554.231, and that filing such a notice is "necessary to perfect an assignment of rents under Michigan law." *See* Complaint at ¶ 30 (DN 1 in Adv. No. 10-80547). This premise contravenes this court's decision in *In re Mount Pleasant Ltd. Partnership*, 144 B.R. 727, 737 (Bankr. W.D. Mich. 1992), a decision that took considerable pains to distinguish between "perfection" (which Judge Stevenson concluded occurred upon recording the assignment of rents with the Register of Deeds) and enforcement (which requires, *inter alia*, recording the default notice). Although the Debtor's complaint cites M.C.L. 554.231, the next section, as Judge Stevenson noted, provides as follows:

> The assignment of rents, when so made, shall be a good and valid assignment
> of the rents to accrue under any lease or leases in existence or coming into

> existence during the period the mortgage is in effect, against the mortgagor or mortgagors or those claiming under or through them *from the date of the recording of such mortgage*, and shall be binding upon the tenant under the lease or leases upon service of a copy of the instrument under which the assignment is made, together with notice of default as required by section 1.

M.C.L. § 554.232 (emphasis added). The language of this statute makes the recording of the mortgage or assignment of rents the *sine qua non* of perfection; the recording of the notice of default makes the perfected assignment enforceable against tenants.   In making these observations, the court does not pretend to resolve the lawsuit, but only to make a prediction about the merits in the course of deciding whether the mere pendency of the claims should prevent dismissal.

As noted in a prior ruling permitting the Receiver to remain in possession, the Debtor has lost, and been unable to recover, control of the Real Property and the rents.   Under the circumstances, the court has profound doubts about the ability of the Debtor to meet its administrative obligations in Chapter 11.  Although the sale of the lawsuit may mitigate this concern, the court is well aware that professional fees in a Chapter 11 case -- especially one as contested as this one -- can quickly outpace the benefits of reorganization for the Bankruptcy Code's primary constituents, namely the Debtor and its ordinary creditors.

For these reasons, the court predicts that the reorganization of the Debtor is not reasonably likely, particularly given the court's decision not to approve the sale of the Real Property over the Trust's objection.  Cause exists to dismiss the case, and the court is unable to identify unusual circumstances establishing that dismissal is not in the best interests of creditors and the estate. *See* 11 U.S.C. § 1112(b)(1).   Given the absence of meaningful assets for administration, conversion is not an option.  The court concludes that dismissal is the more appropriate remedy.

Finally, the dismissal of the case renders moot all pending motions, applications, and the adversary proceeding.

### III. CONCLUSION AND ORDER

The court is mindful that the petitioning creditors had pinned any hope of payment on this proceeding under title 11, but the combination of a grossly undersecured creditor, lawfully dispossessed debtor, and well-settled legal principles doomed this case at its inception. Despite the Debtor's zealous and innovative prosecution of the case after entry of the order for relief, the court concludes that perpetuating this proceeding would be an exercise in futility, certain to spawn unreasonable delay and expense that the estate cannot bear.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Dismissal Motion (DN 66) is GRANTED.

IT IS FURTHER ORDERED that the Clerk shall take such steps as necessary to close the case and related proceedings, and give parties notice of the dismissal in accordance with the court's rules and usual procedures.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Opinion and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Heather Deans Foley, Esq., Joel D. Applebaum, Esq., Kevin A. Fanning, Esq., Norman C. Witte, Esq., Robert F. Wardrop, II, Esq., Michelle Wilson, Esq., Brian R. Trumbauer, Esq., the 20 largest creditors, and all parties requesting notice of proceedings.

**IT IS SO ORDERED.**

Scott W. Dales
United States Bankruptcy Judge

**Dated: October 04, 2010**